**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NATALIE DOUGLAS, | ) CASE NO. 1:23-CV-00217-BMB |
| | ) |
| Plaintiff, | ) JUDGE BRIDGET MEEHAN |
| | ) BRENNAN |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| Defendant, | ) |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |

**I. Introduction**

Plaintiff, Natalie Douglas ("Douglas" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On February 21, 2019, Claimant filed an application for DIB, alleging a disability onset date of November 1, 2016. (ECF No. 7, PageID #: 41). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 29, 2020, an ALJ held a hearing but ultimately postponed it to a later date due to difficulty understanding Claimant's testimony. (*Id.* at PageID #: 106-109). The hearing resumed on March 2, 2022, and Claimant, represented by counsel, and an impartial

1

vocational expert testified. (*Id.* at PageID #: 41). On March 22, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 41-53). The ALJ's decision became final on December 6, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 27).

On February 5, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 13, 14). Claimant asserts the following assignments of error:

> (1) The ALJ erroneously failed at Step Two of the Sequential Evaluation to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments when forming the RFC.
>
> (2) The ALJ found at Step Four of the Sequential Evaluation that Plaintiff could return to her past relevant work as an invoice control clerk. This finding lacks substantial evidence as the ALJ failed to properly evaluate Plaintiff's symptoms in accordance with Social Security Ruling 16-3p.
>
> (3) The ALJ found at Step Four of the Sequential Evaluation that Plaintiff could return to her past relevant work as an invoice control clerk. This was in error as the RFC did not include all Plaintiff's documented and established limitations.

(ECF No. 9 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> She noted that she was terminated after she passed out and hit her head. She noted that she broke her ankle in three places. She stated that her hypertension causes balance issues. She stated that she has arthritis that effects her right knee and hand. She stated that she can sit for 45 minutes. she noted that she uses a wheelchair. She noted that her legs swell when she sits too long. She has gotten blood clots. Mentally, she reported that she needs encouragement to do household chores. She stated that she does handle stress well. The claimant reported that she drives, although it had been a while. She lives with her family. She takes care of her mother. She shops and prepares meals. She does laundry and the dishes. She follows written instructions well. [S]he reads and plays digital games. She goes to church. (See Hearing Testimony and 8E).

(ECF No. 7, PageID #: 46-47). Claimant also testified that following her stroke it was "pretty hard to communicate" and that she still has bad days where she has to "pick the words out of [her] mouth." (*Id.* at PageID #: 85-86).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

The claimant attended a psychological consultative examination in July of 2017. On exam, the claimant was appropriately groomed and dressed casually. Vision was correct with glasses. She was polite, made good eye contact and established rapport easily. She appeared to be an accurate historian, providing detailed autobiographical history. Her motor behavior was unremarkable. Her expressive language was fluent, with normal rate and prosody. Receptive language appeared intact on informal observation. Her affect was largely euthymic: however, she became tearful when discussing her difficulties. Thought processes were logical and coherent. Thought content was focused on her life stressors and losses. He was oriented to person, place, and time. judgment and insight appeared fair. (See 1F).

A CT of the lower extremity was taken in May of 2018. Moderate talonavicular degenerative change with prominent dorsal kissing osteophytes. Multiple findings which may relate to prior injuries, without acute osseous injury evident. Varicose veins were noted. (2F/27; 4F/36).

On June 20, 2018, the claimant underwent medial column arthrodesis with NC and TN arthrodesis. Percutaneous tendo Achilles lengthening, on the right. (4F/32).

On November 22, 2018, the claimant was admitted with chest discomfort, shortness of breath, and subsequently found to have elevated troponin. (2F/6). A CT of the chest was completed in November of 2018 showed no pulmonary embolus (2F/3). A CT of the chest showed no acute cardiopulmonary process, but did show multilevel degenerative changes of the spine (2F/4). An echocardiogram was also taken, showing the left ventricular systolic function was mildly decreased with a 45-50% estimated ejection fraction. Mid and apical anterior wall and apical lateral segment are abnormal. Spectral Doppler showed an impaired relaxation pattern of left ventricular diastolic filling. There was moderate concentric left ventricular hypertrophy. (2F/10).

In January of 2019 the claimant was seen for follow-up. Since her appointment last month, she reported passing out 3 times. She had checked her blood pressure and it was very labile at home. She reported continuing to cut down on smoking

and was down another 5lbs. She passed out on Christmas Eve but did not go to the hospital but did see an orthopedic doctor due to foot pain and she had a fracture and required a cast. She reported compliance with her fluid and sodium restriction and monitoring her weight daily. She was given an inhaler for her shortness of breath and reports improvement with using that. (3F/2). On exam, she was alert and oriented, in no acute distress, without pallor or cyanosis and was well nourished. Neck had normal range of motion without masses palpated. Heart sounds auscultated clearly without abnormal splitting. There was no edema nor varicosities noted. Respiratory exam showed normal respiratory effort. Musculoskeletal exam showed color, temperature, and mobility of joints were within normal limits. She had full range of motion without pain or resistance. (3F/3).

In March of 2019, the claimant complained of medial and lateral knee pain with occasional popping. She stated she stepped off a curb wrong a few years ago. X-rays of the right knee showed good joint space preservation but tricompartmental osteophytes. (4F/2-3).

MR views of the right knee were taken on April 2, 2019. It showed partial root ligament tear of the posterior horn of the lateral meniscus. These was a 16 x 6 mm cartilage defect within the central posterior margin lateral femoral condyle with nondisplaced 7 mm chondral flap demonstrated. Severe thinning the cartilage involving portions of the central posterior margin lateral tibial plateau. There was a small leaking popliteal cyst. (5F/3).

The claimant attended another psychological consultative examination on April 19, 2019. The claimant noted she had been feeling "kind of crappy." She denied currently wanting to harm herself or anybody else. She denied psychosis. She feels anxious because she needs disability benefits to be approved this time. Her mood over the past couple of weeks has been "pretty down." She does not sleep well and takes melatonin. (7F/3). On exam, she was at ease and made a couple of jokes. Rapport was easy to establish. Eye contact was good. There were no abnormal motor movements evident. She communicated without difficulty. Her speech was of an appropriate rate, tone, and volume. She had a reserved demeanor but did all that was asked. She was easy to interact with. Rapport was easy to establish with her. She was oriented to person, place, and time. Insight and judgment were good. (7F/5-6).

On April 23, 2019, the claimant attended an internal consultative examination. On exam, she had decreased strength and range of motion in both shoulders. No joint effusions. No muscle masses. No clubbing, cyanosis, or edema. Gait was even and regular. No apparent limp, shuffle, or other disturbance. She used a cane for support. Flat feet. Dr. Dorothy Bradford noted, "In my medical opinion claimant has DJD of the thoracolumbar and lumbosacral spines without radiculopathies. She has DJD of the feet and uses a cane for support. She has compensated CHF and is a NYHA Class II. Comorbid conditions are varicose veins, pes planus,

4

hypertension, hypothyroidism, depression and anxiety. She is unable to perform active or sedentary activity." (8F/7-9).

Views of the lumbar spine showed mild thoracolumbar and lumbosacral arthritis (8F/6).

The claimant reported in June of 2019 that her knee was doing well. her pain was minimal. She had no weakness. It was noted that she was full weight bearing and without the use of aids. It was noted that the claimant was doing well, and Dr. Frank Myers noted she may go about her business and continue with activity as tolerated. (9F/2).

An echocardiogram was completed in July of 2019. It normal left ventricular size and function. Estimated LVEF 55-60%. Mild mitral regurgitation. Trace tricuspid regurgitation. LVH and abnormal left ventricular relaxation. Unable to estimate pulmonary arterial systolic pressure. Normal estimated CVP. (10F/1).

An exam was recorded on July 29, 2019. She was alert and oriented, in no acute distress, without pallor or cyanosis and well nourished. No abnormalities were noted in external ears and no abnormalities noted in the nose. Color, temperature, and mobility of joints were within normal limits. No abnormalities noted in extremities and full range of motion without pain or resistance was noted. She had normal respiratory effort without usage of auxiliary muscles of respiration. No areas of point tenderness noted. Heart sounds auscultated clearly without abnormal splitting, S4 nor S3, nor murmurs nor rubs. (12F/6).

An MRI of the brain was performed on December 19, 2019. It showed a large area of acute/subacute infarction involving the left temporal lobe cortex as above. No signs of acute hemorrhage or significant midline shift identified. (13F/8).

In January of 2020, it was noted that the claimant had a good recovery from your left middle cerebral artery stroke. Dr. Rorick noted that he expected the claimant to have a further recovery. He recommend continuing the claimant's current medications. (13F/17). On exam, she was healthy-appearing, well-nourished, and well-developed. She was ambulating normally. She had good judgement. She was active and alert. She had a mildly labile affect. She was oriented to time, place, and person. Her recent memory was normal and remote memory was normal. Her right shoulder showed no bony defects, no crepitus, no pain. Cranial nerves were grossly intact. Coordination and cerebellum showed no tremor. Motor strength showed mild expressive aphasia. (14F/6).

Views of the right shoulder taken on January 15, 2020, showed mild acromioclavicular osteoarthritis (14F/16).

Views of the left ankle were taken on May 2, 2020, showing bimalleolar fracture. Regional soft tissue swelling was noted. Anterior and posterior calcaneal spurs.

5

> Small dorsal midfoot osteophytosis. (15F/9). A CT of the head showed old small infarct with mild encephalomalacia at left posterior parietal region. No acute hemorrhage or mass effect or midline shift is evident. Small fluid in the left maxillary sinus was seen. A CT of the cervical spine showed mild degenerative changes at the C5-C6 level. No acute fracture or dislocation or acute bony changes evident. (15F/13).
>
> The claimant presented in September of 2020 with an antalgic gait and knee pain. She noted exacerbation with stair climbing, standing, for long periods of time, and walking. (19F/4). Examination showed mild swelling, and she was neurovascularly intact. (19F/10).
>
> On September 21, 2020, the claimant underwent a right total knee arthroplasty (19F/18).
>
> On October 27, 2020, follow up noted that the claimant was well. it was noted that, because she was progressing well, she would not need narcotics much longer. It was noted that her walking ability was good. She was ambulating without aids. (16F/1).

(*Id*. at PageID #: 47-49).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. Through the date last insured, the claimant had the following severe impairments: obesity; syncope; hypertension; dysfunction of the major joint; reconstruction surgery of a weight bearing joint; degenerative disc disease; and congestive heart failure (20 CFR 404.1520(c)).

. . .

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except the claimant can occasionally lift 20 pounds, 10 pounds frequently. The claimant can sit for 6 hours, stand for 2 hours, and walk for 2 hours in an 8-hour workday. She can operate foot controls with the right lower extremity occasionally. The claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. The claimant can never work at unprotected heights, no dangerous machinery, and no commercial driving.

6. Through the date last insured, the claimant was capable of performing past relevant work as an invoice control clerk. This work did not require the

performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2016, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(f)).

(*Id*. at PageID #: 43, 45-46, 52-53).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-

insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*.

### C. Discussion

Claimant raises three issues on appeal: (1) whether the ALJ erred at Step Two by failing "to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments when forming the RFC;" (2) whether the ALJ's finding that Claimant could return to her past relevant work "lacks substantial evidence as the ALJ failed to properly evaluate Plaintiff's symptoms in accordance with Social Security Ruling 16-3p;" and (3) whether the ALJ failed to "include all Plaintiff's documented and established limitations" in the RFC.

#### 1. The ALJ complied with SSR 96-8p in formulating the RFC.

Claimant argues the ALJ erred because he found her depression and dyslipidemia to be non-severe impairments; "failed to mention the fact that Plaintiff had a stroke with residual

8

aphasia . . . or migraines;" and "failed to consider any of these impairments when forming his RFC." (ECF No. 9 at 10, 13). The Commissioner responds that the ALJ considered Claimant's residual aphasia and migraines in formulating the RFC because he "expressly discussed Plaintiff's left middle stroke (Tr. 23) and credited medical opinion evidence – specifically the prior administrative medical findings of Elizabeth Das, M.D. (Tr. 103-118). – that considered Plaintiff's stroke and headaches (Tr. 24)." (ECF No. 13 at 8). The Commissioner argues that the ALJ's determination that Claimant's depression was non-severe was supported by Dr. Stephanie Towns' report that Claimant "did not demonstrate any difficulty with regard to concentration," which is distinct from her observation that "Plaintiff's depressive *symptoms* (i.e., her subjective complaints regarding her depression) would likely prevent her from regular attendance" and consistent task persistence. (*Id.* at 9). The Commissioner argues that because the ALJ considered these impairments in the RFC, any error in failing to explicitly identify them as severe or non-severe at step two is not reversible error. (*Id.* at 8, 10).

The Court agrees with the Commissioner that because the ALJ proceeded through the sequential analysis, the ALJ's failure to find Claimant's additional impairments severe at step two was harmless. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.3d 85, 89 (6th Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments: "obesity; syncope;

9

hypertension; dysfunction of the major joint; reconstruction surgery of a weight bearing joint; degenerative disc disease; and congestive heart failure." (ECF No. 7, PageID #: 43). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

However, this does not resolve the issue before the Court. "When formulating an RFC, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

In discussing Claimant's stroke, the ALJ noted:

In January of 2020, it was noted that the claimant had a good recovery from your left

10

> middle cerebral artery stroke. Dr. Rorick noted that he expected the claimant to have a further recovery. He recommend continuing the claimant's current medications. (13F/17). On exam, she was healthy-appearing, well-nourished, and well-developed. She was ambulating normally. She had good judgement. She was active and alert. She had a mildly labile affect. She was oriented to time, place, and person. Her recent memory was normal and remote memory was normal. Her right shoulder showed no bony defects, no crepitus, no pain. Cranial nerves were grossly intact. Coordination and cerebellum showed no tremor. Motor strength showed mild expressive aphasia. (14F/6).

(ECF No. 7 at PageID #: 49). This discussion demonstrates that the ALJ in fact considered Claimant's stroke and resulting aphasia but found that no additional limitations in the RFC were warranted because Claimant's aphasia was mild and she was recovering well.

It is also clear that the ALJ considered Claimant's depression in crafting the RFC. The ALJ explained his reasoning for not including additional limitations in the RFC:

> Mentally, she reported that she needs encouragement to do household chores. However, the record does not support severe mental impairments. She stated that she does handle stress well. The claimant reported that she drives, although it had been a while. She lives with her family. She takes care of her mother. She shops and prepares meals. She does laundry and the dishes. She follows written instructions well. She reads and plays digital games. She goes to church. On exam, she was active and alert. She had a mildly labile affect. She was oriented to time, place, and person. Her recent memory was normal and remote memory was normal.

(*Id.* at PageID #: 52). Additionally, the ALJ relied on the opinion of Dr. Jeff Rindsberg, indicating:

> No cognitive problems are noted for Ms. Douglas. She is able to comprehend instructions. Maintaining attention and concentration are also not an issue for Ms. Douglas from a mental health standpoint. She can persist and get tasks completed. Interacting with others is not a major problem. She does not socialize much, as it is a hassle to go out. Otherwise, she is able to socialize. Handling pressure in a work situation should not be a problem for Ms. Douglas because of her depression. Most of her symptoms are under control and she tries to persevere.

(*Id.* at PageID #: 51). To the extent Claimant challenges the ALJ's failure to include additional limitations based on Dr. Stephanie Towns' observation that Claimant's "depression symptoms would likely prevent her from regular attendance and consistent task persistence," the Court

11

agrees with the Commissioner that Towns' statement regarding Claimant's *symptoms* is not inconsistent with her *observations*, including that Claimant "demonstrated appropriate social skills" and "appears to have the skills to cope with normal stressors effectively." (*Id.*).

Claimant is correct that the ALJ failed to discuss Claimant's migraines in the decision. However, Claimant points only to general mentions of "migraines" or "headaches" in the record and fails to point to any limitations that resulted from this alleged impairment. "SSR 96-8p explains that, '[i]n assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020). But because Claimant did not point to—and the Court has not found—any evidence in the record to support any limitations from her migraines, there was nothing additional for the ALJ to consider in formulating the RFC. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"); *Helwagen v. Comm'r of Soc. Sec.*, No. 5:22-CV-01467, 2023 WL 3727253, at *17 (N.D. Ohio Apr. 20, 2023) (noting that where claimant "presented no arguments in support of how or why these non-severe impairments should have altered the ALJ's RFC," substantial evidence supports the ALJ's determination that the impairments did not support a finding of disabled), *report and recommendation adopted*, No. 5:22CV1467, 2023 WL 3726575 (N.D. Ohio May 30, 2023)

Overall, the RFC accounted for all the limitations the ALJ found supported by the record in accordance with SSR 96-8p and substantial evidence supports the ALJ's conclusion.

**2. The ALJ properly applied SSR 16-3 in considering Claimant's symptoms.**

12

Claimant argues that the ALJ's "[f]ailure to consider Plaintiff's disabling pain in his RFC determination constituted harmful and reversible error in this matter." (ECF No. 9 at 18). Claimant provides a detailed recantation of the evidence and argues that the "[t]he ALJ's finding that [she] could engage in her past relevant work on a full-time and sustained basis was not supported by substantial evidence as the combination of her impairments and related symptoms precluded her from sustaining work activity on a consistent and full-time basis." (*Id.* at 14-19). The Commissioner responds that the decision is supported by substantial evidence because the ALJ analyzed Claimant's complaints against the medical evidence; "made clear statements indicating that he found that the medical evidence did not support the full breadth of Plaintiff's complaints;" relied on Claimant's statements regarding her activities of daily living and medical opinion analysis; and provided "three, single-spaced paragraphs that explained how the evidence overall – such as medical evidence of a normal gait and cognition, her activities of daily living, and the persuasive medical opinion evidence – were inconsistent with Plaintiff's allegations." (ECF No. 13 at 12).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and

13

side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

The ALJ here provided a summary of his findings concerning Claimant's RFC:

Physically, the claimant noted that she was terminated after she passed out and hit her head. She noted that she broke her ankle in three places. She stated that her hypertension causes balance issues. She stated that she has arthritis that effects her right knee and hand. She stated that she can sit for 45 minutes. [S]he noted

> that she uses a wheelchair. She noted that her legs swell when she sits too long. She has gotten blood clots. Views of the lumbar spine showed mild thoracolumbar and lumbosacral arthritis. On September 21, 2020, the claimant underwent a right total knee arthroplasty. These findings support the less than light level noted above, with additional limitations in walking/standing, and postural/environmental limitations to account for the totality of the evidence and the claimant's subjective complaints. However, a more limited physical RFC is not supported by the record. An MRI of the brain showed a large area of acute/subacute infarction involving the left temporal lobe cortex as above. No signs of acute hemorrhage or significant midline shift identified. On exam, she was healthy-appearing, well-nourished, and well-developed. She was ambulating normally. She had good judgement. She was active and alert. She had a mildly labile affect. She was oriented to time, place, and person. Her recent memory was normal and remote memory was normal. Her right shoulder showed no bony defects, no crepitus, no pain. Cranial nerves were grossly intact. Coordination and cerebellum showed no tremor. Motor strength showed mild expressive aphasia. On October 27, 2020, follow up noted that the claimant was well. it was noted that, because she was progressing well, she would not need narcotics much longer. It was noted that her walking ability was good. She was ambulating without aids.
>
> Mentally, she reported that she needs encouragement to do household chores. However, the record does not support severe mental impairments. She stated that she does handle stress well. The claimant reported that she drives, although it had been a while. She lives with her family. She takes care of her mother. She shops and prepares meals. She does laundry and the dishes. She follows written instructions well. She reads and plays digital games. She goes to church. On exam, she was active and alert. She had a mildly labile affect. She was oriented to time, place, and person. Her recent memory was normal and remote memory was normal.

(ECF No. 7 at PageID #: 51-52). This discussion shows that the ALJ properly considered the medical records and opinions, the Claimant's statements, and the Claimant's activities of daily living in rejecting Claimant's testimony regarding the severity of her symptoms. To the extent Claimant's lengthy recitation of the record is meant to show that an alternative finding is warranted, such is insufficient to disturb the ALJ's finding, which the Court must defer to "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Because the ALJ articulated his reasons for

15

discounting Claimant's testimony and substantial evidence supports his decision, the Court will not disturb his findings.

### 3. The RFC is supported by substantial evidence.

Claimant argues that the RFC "exceeded the opined limitations in the record" because it did not include the use of a cane and found that she could "stand for 2 hours and walk for 2 hours a day" when "even the persuasive State Agency reviewing physicians opined that Plaintiff could only stand/walk for a combined 2 hours a day." (ECF No. 9 at 20-21). The Commissioner responds that while the ALJ acknowledged Claimant's use of a cane and Dr. Bradford's opinion that Claimant required an assistive device, the ALJ found Dr. Bradford's opinion unpersuasive and credited contrary findings that Claimant did not require an assistive device. (ECF No. 13 at 10-11). Additionally, the Commissioner argues that the evidence Claimant relies on is insufficient to show that a cane is medically necessary because it "does not describe the circumstances in which the assistive device would be needed, as required by SSR 96-9p." (*Id.* at 11). Claimant replies that the "opinions limiting [her] to no more than 2 hours a day of standing/walking were completed prior to the submission of updated information supporting Dr. Bradford's findings that Plaintiff required the use of an assistive device." (ECF No. 14 at 1-2).

> Social Security Ruling 96-9p explains that an ALJ should "find that a hand-held assistive device is medically required," only where there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information."

*Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020) (citing SSR 96-9, 1996 WL 374185, at *7).

As the Commissioner argues, while the medical records document Claimant's *use* of a cane, there is no evidence that establishes the *need* for such or describing the circumstances in

16

which it is needed. (*See* ECF No. 7, PageID #: 696, 1056). Additionally, the state agency opinions, which the ALJ found persuasive, indicated that Claimant could stand and/or walk for two hours and did not include the use of any assistive devices. (*Id.* at 123-25, 140-42). Thus, substantial evidence supports the RFC. While Claimant argues that the record was updated "regarding the fact that Plaintiff had a stroke and had difficulty talking" after the State Agency review, she fails to point to—and the Court has not found—any updated records regarding the need for an assistive device. (*See* ECF No. 14 at 1-2).

Because substantial evidence supports the RFC, the Court will not disturb the ALJ's decision.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: October 31, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).