UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE DOUGLAS, | ) | CASE NO. 1:23-cv-00217 |
| Plaintiff, | ) ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Carmen E. Henderson ("R&R") (Doc. No. 15) recommending that the decision of the Commissioner be affirmed. Plaintiff filed her objection (Doc. No. 16), and Defendant filed responses to the R&R and Plaintiff's objection (Doc. No. 17). For the reasons that follow, Plaintiff's objection is OVERRULED, the R&R is ADOPTED, and the decision of the Commissioner is AFFIRMED.

I. **Background**

On February 21, 2019, Plaintiff filed an application for Disability Insurance Benefits alleging a disability onset date of November 1, 2016. (Doc. No. 7 at 41.)[1] Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On May 29, 2020, an ALJ held a hearing (*Id.* at 96.) This hearing was post postponed until March 2, 2022, due to difficulty understanding Plaintiff's testimony. (*See id.* at 106-09, 41.) On both hearing dates, Plaintiff was represented by counsel.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

(*Id.*)  The ALJ also heard testimony from an impartial vocational expert.  (*Id.*)

On March 22, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled.  (*See id.* at 41-53.)  On December 6, 2022, the Appeals Council declined further review, making the ALJ's decision final.  (*Id.* at 27-29.)

On February 5, 2023, Plaintiff timely commenced this action.  (Doc. No. 1.)  On June 12, 2023, Plaintiff filed her brief on the merits.  (Doc. No. 9.)  On August 28, 2023, Defendant filed its brief on the merits.  (Doc. No. 13.)  Plaintiff filed a reply brief on September 11, 2023.  (Doc. No. 14.)  On October 31, 2023, the Magistrate Judge issued her R&R.  (Doc. No. 15.)  On November 14, 2023, Plaintiff timely filed her objection.  (Doc. No. 16.)  Defendant filed a response to Plaintiff's objection on November 17, 2023.  (Doc. No. 17.)

**II.     Standard of Review**

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (flush language).

For present purposes, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.  To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).  During the first four steps, the claimant bears the burden of proof.  *Walters*, 127 F.3d at 529.  The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d

3

847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).

### III. Discussion

#### A. Record Before the ALJ

Plaintiff testified at the hearing about her symptoms and ability to perform daily activities. The ALJ summarized Plaintiff's relevant testimony as follows:

> She noted that she was terminated after she passed out and hit her head. She noted that she broke her ankle in three places. She stated that her hypertension causes balance issues. She stated that she has arthritis that [a]ffects her right knee and hand. She stated that she can sit for 45 minutes. [S]he noted that she uses a wheelchair. She noted that her legs swell when she sits too long. She has gotten blood clots. Mentally, she reported that she needs encouragement to do household chores. She stated that she does handle stress well. The claimant reported that she drives, although it had been a while. She lives with her family. She takes care of her mother. She shops and prepares meals. She does laundry and the dishes. She follows written instructions well. [S]he reads and plays digital games. She goes to church.

(Doc. No. 7 at 46-47.)

On August 8, 2019, Plaintiff completed an adult function report, describing her symptoms and daily tasks. (*Id.* at 308-15.) When asked how her conditions limit her ability to work, Plaintiff noted "pain, legs swell + hurt when sitting for long periods of time. Also get

4

blood clots. Passing out, chest pain, medication causes frequent urination, back pain. Knee pain. Dizziness." (*Id.* at 308, 312.) Plaintiff stated that she cares for both her mother and pets. (*Id.* at 309.) Plaintiff noted that prior to her injuries, she could take the stairs, carry things, and "stand or sit for extended times." (*Id.*) Plaintiff stated it is hard to breathe when she lays down, which affects her sleep. (*Id.*) Plaintiff described using a shower chair and a raised seat for personal care. (*Id.*) Plaintiff reported she prepares food daily. (*Id.* at 310.) Plaintiff reported she is only able to walk for a minute or two. (*Id.*)

Plaintiff stated she is capable of paying attention "as long as needed." (*Id.*) Plaintiff also noted that she is able to follow spoken instructions well. (*Id.*) Plaintiff stated that she gets along with authority figures. (*Id.* at 314.) Plaintiff noted that she does not handle stress or changes in routine well. (*Id.*) Plaintiff reported that she was prescribed a wheelchair sometimes in 2018. (*Id.*) Plaintiff also noted that she uses her wheelchair "on days when my knee is really bad or I'm having a bad day with a lot of dizziness." (*Id.*)

Eric Pruitt, an impartial vocation expert, also testified at the hearing. (*Id.* at 41.) Mr. Pruitt evaluated Plaintiff's past relevant work experience as a deli counter clerk and an invoice control clerk. (*Id.* at 52.) Mr. Pruitt opined that Plaintiff would not be able to perform past relevant work as deli counter clerk. (*Id.*) In contrast, Mr. Pruitt opined that Plaintiff would be able to perform past relevant work as an invoice control clerk. (*Id.* at 52-53.)

The ALJ summarized Plaintiff's health records and symptoms. (*See id.* at 46-52.) In July 2017, Plaintiff attended a psychological consultative examination with Dr. Stephanie J. Towns. (*Id.* at 344-48.) Dr. Towns described Plaintiff as appropriately groomed and dressed. (*Id.* at 346.) Dr. Towns reported Plaintiff was polite, made good eye contact and established rapport easily. (*Id.*) Dr. Towns' report further noted that Plaintiff has a history of hepatitis C, deep vein

5

thrombosis, hyperlipidemia, Graves disease, hypertension, chronic joint pain, syncope, bulging discs, degenerative disc disease, venous stasis ulcers, hemiplegic migraine, mitral valve prolapse, and depression. (*Id.* at 345.) The report recorded that Plaintiff last worked in November 2016, when she was let go from her job in data processing due to medical absences. (*Id.*) Dr. Towns also stated that Plaintiff's mood was largely euthymic, though she became tearful when discussing her difficulties. (*Id.* at 346.) Dr. Towns did not note any difficulties in Plaintiff's cognitive function or judgment. (*Id.* at 346-37.) In sum, this report concluded that Plaintiff "reported a number of symptoms of depression that negatively impact her function" and diagnosed her with major depressive disorder. (*Id.* at 347.) Dr. Towns' prognosis was that "[g]iven the chronic nature of her symptoms, [Plaintiff] will likely continue to experience symptoms (of varying severity) over the course of her lifetime." (*Id.*)

In May 2018, a scan of Plaintiff's legs showed "moderate talonavicular degenerative change with prominent dorsal kissing osteophytes" and varicose veins. (*Id.* at 376.) On June 20, 2018, Plaintiff underwent surgery on her right Achilles tendon. (*Id.* at 447.)

On November 22, 2018, Plaintiff was admitted to the hospital for chest discomfort, shortness of breath, and elevated troponin. (*Id.* at 355.) Multiple scans of Plaintiff's chest and abdomen were taken, showing multilevel degenerative changes of the spine. (*Id.* at 353.) Other tests showed various conditions related to Plaintiff's heart. (*See id.* at 359.)

In January 2019, Plaintiff attended a follow up appointment with her cardiologist. (*Id.* at 408.) Plaintiff reported having passed out three times since her last visit. (*Id.*) Plaintiff stated that she had not gone to the hospital for these incidences. (*Id.*) She had visited the hospital for an orthopedic issue and received a cast. (*Id.*) Plaintiff was prescribed an inhaler for her shortness of breath. (*Id.*) Plaintiff was further counseled on her weight and blood pressure. (*Id.*

6

at 410.)

In March 2019, Plaintiff complained of knee pain. (*See id.* at 417.)  On April 2, 2019, scans of Plaintiff's knee showed a partial root ligament tear, a cartilage defect, and a small cyst. (*Id.* at 454.)

On April 19, 2019, Plaintiff attended another psychological consultative examination. Dr. Rindsberg noted that Plaintiff reported feeling "kind of crappy" and "anxious." (*Id.* at 686.) Dr. Rindsberg recorded that Plaintiff showed no abnormal motor movements. (*Id.*)  The report reflected that Plaintiff was able to communicate without difficulty and was at ease with a friendly affect. (*Id.* at 687.)  The report also stated there were no issues with Plaintiff's cognitive function or judgment. (*Id.*)  Dr. Rindsberg concluded that Plaintiff suffered from major depressive disorder and that her prognosis was fair. (*Id.*)

On April 23, 2019, Plaintiff attended an internal consultative examination with Dr. Dorothy Bradford. (*See id.* at 691-98.)  Dr. Bradford noted that Plaintiff "uses a cane most of the time for support." (*Id.* at 696, 698.)  Dr. Bradford's report described Plaintiff as awake and alert. (*Id.* at 698.)  The report further recorded that Plaintiff exhibited normal speech and language. (*Id.*)  Dr. Bradford noted that Plaintiff suffered from congestive heart failure and had comorbidities that included varicose veins, pes planus, hypertension, hyperthyroidism, depression, and anxiety. (*Id.*)  Dr. Bradford concluded that based on Plaintiff's conditions, "[s]he is unable to perform active or sedentary activity." (*Id.*)

On July 29, 2019, Plaintiff had a follow up appointment with her cardiologist. (*See id.* at 730.)  She was counseled on her hypertension, chest pain, and hepatitis C. (*Id.* at 733.)

In December 2019, Plaintiff experienced a cerebral vascular accident, or stroke. (*Id.* at 760.)  On December 19, 2019, an MRI of Plaintiff's brain showed a large area of acute/subacute

7

infarction, but no signs of acute hemorrhage or significant midline shift. (*Id.* at 745.) In January 2020, Dr. Mark Rorick noted that Plaintiff was recovering well from her stroke. (*Id.* at 760.) He also noted that he expected further recovery (*Id.*). He reported that Plaintiff appeared healthy and well nourished. (*Id.*) Dr. Rorick further reported that Plaintiff's "motor strength is recovered and her speech was improving." (*Id.*) However, he observed "she still has severe headaches nearly daily and is very emotional." (*Id.*)

In January 2020, Plaintiff was seen for right shoulder pain. (*Id.* at 770.) In May 2020, she was seen for pain in her ankles and right knee. (*Id.* at 763.) A scan concluded that she had a tear in her knee. (*Id.*) Plaintiff was referred to an orthopedic doctor. (*Id.*) Also in May 2020, a scan of Plaintiff's head showed an "old small infarct with mild encephalomalacia." (*Id.* at 785.) A scan of her spine showed no fracture or dislocation. (*Id.*)

In September 2020, Plaintiff was seen for her antalgic gait and knee pain. (*Id.* at 1048.) On September 16, 2020, Dr. Frank Myers saw Plaintiff for sharp pains and aches in her knee. (*Id.* at 1056.) Dr. Myers noted that Plaintiff could take pain medication as needed as a means of relief. (*Id.*) Dr. Myers also noted that Plaintiff could use a cane as needed as a potential "other means of relief." (*Id.*) On September 21, 2020, Plaintiff underwent a right total knee arthroplasty. (*Id.* at 1048-49.) On October 27, 2020, a follow up appointment noted that Plaintiff was doing well, with mild pain. (*Id.* at 834.) This follow up also noted that Plaintiff was "ambulating without aids." (*Id.*)

### B. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2021. (*Id.* at 43.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between November 1, 2016 and December 31, 2021.

(*Id.*)  For step two, ALJ concluded that Plaintiff had several severe impairments including "obesity; syncope; hypertension; dysfunction of the major joint; reconstruction surgery [of] a weight bearing joint; degenerative disc disease; and congestive heart failure." (*Id.*)  At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 4, Subpart P, Appendix 1." (*Id.* at 45.)  Specifically, the ALJ analyzed listings 1.15, 1.16, and 1.18, finding that Plaintiff did not satisfy all the criteria for any listing. (*Id.* at 45-46)  Next, the ALJ concluded that Plaintiff had a residual functional capacity ("RFC") to perform work with certain limitations. (*Id.* at 46.)  These limitations included that Plaintiff

> can occasionally lift 20 pounds, 10 pounds frequently.  The claimant can sit for 6 hours, stand for 2 hours, and walk for 2 hours in an 8-hour workday.  She can operate foot controls with the right lower extremity occasionally.  The claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally.  The claimant can never work at unprotected heights, no dangerous machinery, and no commercial driving.

(*Id.* at 46)  The ALJ found that Plaintiff was "capable of performing past relevant work as an invoice control clerk" because "[t]his work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (*Id.* at 52.)  Lastly, the ALJ found that Plaintiff was not under a disability between November 1, 2016 and December 31, 2021. (*Id.* at 53.)

### C. The Magistrate Judge's Report and Recommendation

The R&R noted that its review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. (*See* Doc. No. 15 at 1364.)  The R&R also stated the five-step process ALJs must use to determine whether a claim is entitled to SSI or disability insurance benefits. (*See id.* at 1364-65.)  The R&R likewise detailed and evaluated Plaintiff's challenges to the Commissioner's

9

determination. (*See id.* at 1365-74.) Specifically, Plaintiff raised three issues:

1. whether the ALJ erred at Step Two by failing "to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments when forming the RFC;"

2. whether the ALJ's finding that Claimant could return to her past relevant work "lacks substantial evidence as the ALJ failed to properly evaluate Plaintiff's symptoms in accordance with Social Security Ruling 16-3p;" and

3. whether the ALJ failed to "include all Plaintiff's documented and established limitations" in the RFC.

(*Id.* at 1365.)

Regarding Plaintiff's first argument about the ALJ's step two analysis, the R&R observed that any "failure to find [Plaintiff's] additional impairments severe at step two was harmless" because the ALJ concluded Plaintiff did have several other severe impairments and had therefore "cleared step two of the analysis." (*Id.* at 1366-67.) Next, the R&R addressed Plaintiff's argument that her depression, dyslipidemia, and migraines were not factored into the ALJ's RFC analysis. The R&R highlighted the portion of the ALJ's decision where he considered Plaintiff's stroke, mild aphasia, and recovery as part of his RFC analysis. (*Id.* at 1368 (citing Doc. No. 7 at 49).) Similarly, the R&R pointed out sections of the ALJ's decision that discuss Plaintiff's depression and Dr. Rindsberg's opinion regarding her symptoms. (*Id.* (citing Doc. No. 15 at 51, 52).)

The R&R also discussed the ALJ's treatment of Dr. Towns' observation regarding Plaintiff's depression symptoms. (*Id.*) The R&R noted that Dr. Towns' statement that Plaintiff's depression "would likely prevent her from regular attendance and consistent task persistence" is consistent with observations that Plaintiff "demonstrated appropriate social skills" and "appears to have skills to cope with normal stressors effectively." (*Id.* at 1368-69 (citing Doc. No. 15 at 51).) Regarding Plaintiff's migraines, the R&R noted that Plaintiff made only general references to migraines or headaches and had not included evidence that supported limitations related to her

10

migraines. (*Id.* at 1369.) Accordingly, the R&R stated that the RFC accounted for all the limitations that were supported by the record in accordance with SSR 96-8p. (*Id.*)

The R&R addressed Plaintiff's argument that the ALJ failed to consider Plaintiff's disabling pain in the RFC analysis. (*Id.* at 1369-73.) The R&R discussed the ALJ's obligation to look at medical evidence, statements by Plaintiff, other information provided by medical sources, and any other relevant evidence on the record. (*Id.* at 1370 (citing Section 404.1529(c) and SSR 16-3p).) Having laid out this standard, the R&R noted that the ALJ provided a summary of his findings concerning Plaintiff's RFC that included evidence from medical records and opinions, Plaintiff's statements, and Plaintiff's activities of daily living. (*Id.* at 1371-72.) The R&R noted that though Plaintiff argues that an alternative finding is warranted, this argument is not sufficient to disturb the ALJ's decision. (*Id.* at 1372-73.)

For Plaintiff's third argument, the R&R evaluated whether the RFC is supported by substantial evidence. Specifically, Plaintiff argued that the RFC did not include Plaintiff's use of a cane and erroneously found that she could "stand for two hours and walk for two hours a day." (*Id.* at 1373.) The R&R discussed Defendant's argument Plaintiff had not carried her burden at this step because she had not shown cane was not medically necessary, nor did she describe the circumstances in which she would need her cane. (*Id.*) The R&R also noted that the ALJ discussed the state agency opinions that found that Plaintiff could stand or walk for these periods of time. (*Id.*) The R&R further observed that the RFC analysis could not consider updated records regarding Plaintiff's need for a cane following her stroke because Plaintiff had not submitted these records. (*Id.* at 1374.) Accordingly, the R&R stated that there was substantial evidence to support the ALJ's decision. (*Id.*)

In sum, the R&R recommended that the Court overrule Plaintiff's Statement of Errors and

affirm the Commissioner's decision.  (*Id.*)

### D.  *De Novo* Review

In her objection, Plaintiff asserts one specific objection, that being that the recommendation "that Plaintiff did not satisfy the criteria of Social Security Ruling 96-9p" was factually and legally incorrect.  (Doc. No. 16 at 1376.)  To support her objection, Plaintiff focuses on the failure to consider the Plaintiff's use of a cane.  She asserts that Dr. Meyers prescribed the use of a cane in September 2020.  (*Id.*)  She also relies on Dr. Franjo Vladic's October 2021 notation that Plaintiff was "at a high risk for falls" and had leg swelling, venous stasis in her leg, and was morbidly obese.  (*Id.*)  To Plaintiff, the ALJ's failure to address Plaintiff's prescription for a cane in the RFC analysis was harmful error requiring remand.  (*Id.*)

Social Security Ruling 96-9p "explain[s] the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  This ruling provides guidance to ALJs on a number of limitations, including when a hand-held assistive device is medically necessary.  *Id.*  ALJs must have "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)" to find an assistive device is medically necessary.  *Id.*  Ruling 96-9p provides the example of

> an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.

*Id.* This ruling guides ALJs that an individual's use of a cane, even if medically necessary, does not automatically justify an RFC for less than a full range of sedentary work. *Id.* (emphasizing that an RFC for less than a full range of sedentary work "is expected to be relatively rare").

Plaintiff sometimes used a cane or a wheelchair. (Doc. No. 7 at 296, 698, 970, 1075.) The ALJ acknowledged this point and Dr. Bradford's observations in April 2019. (*Id.* at 48, 51.) The ALJ found Dr. Bradford's opinion that Plaintiff's conditions prevented her from performing active or sedentary activity was internally inconsistent *and* inconsistent with the record. (*Id.* at 51.) First, Dr. Bradford's report noted that Plaintiff used a cane *and* that Plaintiff's was even and regular, with no apparent limp, shuffle, or other difficulty. (*Id.*) Second, October 2020 notes of observations reflected that Plaintiff was recovering well from knee surgery and was walking without aids. (*Id.* at 51; *see also id.* at 834.)

Additionally, in September 2020, Dr. Myers noted that Plaintiff could use cane as needed as a potential "other means of relief" for her knee pain. (*Id.* at 1056.). However, this prescription only stated that the cane is to be used "as needed" and therefore does not constitute "medical documentation establishing that [she] required the use of a cane." *Davis v. Comm'r of Soc. Sec.*, No. 5:21-ccv-00598, 2022 WL 2758356, at * 2 (N.D. Ohio July 14, 2022).

In reviewing the record on this point, the ALJ acknowledged (1) Plaintiff's use of a cane and (2) competing observations about her ability to walk evenly without the use of any ambulatory assistance device. *See Martincic v. Comm'r of Soc. Sec.*, No. 1:23-cv-628, 2024 WL 979801, at *3 (N.D. Ohio Mar. 7, 2024) (affirming decision where the ALJ considered both the plaintiff's use of a cane and evidence of a normal gait in the RFC analysis); *see also Fields v. Comm'r of Soc. Sec.*, No. 1:23-cv-00035, 2023 WL 8099368, at *12 (N.D. Ohio Nov. 3, 2023), *report and recommendation adopted*, No. 1:23-cv-00035, 2023 WL 8086787 (N.D. Ohio Nov. 21, 2023)

13

(holding that "the ALJ did not err in failing to include the use of a cane in the RFC analysis" where providers noted the plaintiff's use of a cane, the plaintiff provided no records showing a cane was medically necessary, and records revealed plaintiff was observed with normal gait). Plaintiff's choice does not establish medical necessity or suggest Plaintiff was "us[ing] a cane to meet her treatment goals." *See Jones v. Comm'r of Soc. Sec.*, 815 Fed. App'x 926, 931 6th Cir. 2020).

Next, Plaintiff has not described the circumstances in which she needs a cane. Plaintiff's reliance on Dr. Myers' note that she could use a cane and/or pain medication as needed to manage pain is not sufficient. *See Davis*, 2022 WL 2758356, at * 2 (holding that a prescription for a cane "to be used 'daily as needed'" did not constitute "medical documentation that [the plaintiff] required the use of a cane and describing the circumstances under which it was needed"). Likewise, Plaintiff's emphasis on Dr. Valdic's observation that she was a fall risk in October 2021 does not cure this deficiency as his note does not provide any of the additional details discussed in Ruling 96-9p. For the same reasons, observations that Plaintiff used a cane also do not suffice. *See Jones*, 815 Fed. App'x at 931 (holding that the use of a cane "cannot possibly provide 'the circumstances for which [the assistive device] is needed.'") (quoting SSR 96-9p).

The ALJ's decision considered Plaintiff's use of a cane "as needed." The decision also considered that Plaintiff's physician observed her walking without assistance one month later. Thus, having reviewed the challenged recommendation and authority *de novo*, the Court finds that there is substantial evidence to support the ALJ's RFC analysis and that the ALJ properly considered Social Security Ruling 96-9p.

## IV. <u>Conclusion</u>

For those reasons, Plaintiff's objection is OVERRULED, the R&R is ADOPTED, and the Commissioner's decision is AFFIRMED.  This case is DISMISSED.

**IT IS SO ORDERED.**

Date: March 29, 2024

*/s/ Bridget M. Brennan*
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE